UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**FREDERICK SMITH and TAHMEL GORDON,**

                               **Plaintiffs,**                      1:17-cv-00077 (BKS/CFH)

v.

**TOWN OF LLOYD, et al.,**

                               **Defendants.**

---

**APPEARANCES:**

*For Plaintiffs:*
Roberta D. Asher
Asher & Associates, P.C.
111 John Street, 14th Floor
New York, NY 10038

*For Defendants Town of Lloyd, Sergeant Anthony Kalimeras, Police Officer Stephen Sawyer, Police Officer John Zani, and Police Officer Kyle Esposito (the "Town of Lloyd Defendants"):*
Michael T. Cook
Cook, Netter, Cloonan, Kurtz & Murphy, P.C.
85 Main Street, P.O. Box 3939
Kingston, NY 12401

*For Defendants Ulster County, Sergeant John/Jane Richards, Detective Christopher Zaccheo, Investigator Joseph Sciutto, Deputy James Riley, Deputy Matthew Brophy, and Investigator James Mullen (the "Ulster County Defendants"):*
David L. Posner
McCabe & Mack LLP
63 Washington Street, P.O. Box 509
Poughkeepsie, NY 12602

*For Defendants New York State Trooper Christopher Curley, State Police Senior Investigator Mario Restivo, State Police Senior Investigator Diana Benoit, State Police Investigator Timothy Jordan, State Trooper Brendan Filli, and State Trooper Farlan Khan (the "State Defendants"):*
Eric T. Schneiderman
Attorney General of the State of New York
Maria Lisi-Murray
Assistant Attorney General
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

Plaintiffs Frederick Smith and Tahmel Gordon bring this action under 42 U.S.C. § 1983 against local government units and law enforcement officials concerning events that unfolded on January 25, 2014. (Dkt. No. 1, ¶ 1). Plaintiffs allege that Defendants violated their rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments by: (1) using excessive force against Plaintiff Gordon; (2) falsely arresting Plaintiff Smith; (3) using excessive force against Plaintiff Smith; (4) maliciously prosecuting Plaintiff Smith; (5) denying Plaintiff Smith a fair trial; and (6) failing to intervene to protect Plaintiffs Gordon and Smith while their constitutional rights were being violated. (*Id.* ¶¶ 45-108). Plaintiffs seek compensatory and punitive damages, interest, and reasonable attorneys' fees. (*Id.* at 17). Three groups of Defendants move to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] (*See* Dkt. No. 27 (motion to dismiss by Ulster County Defendants); Dkt. No. 30 (motion to dismiss by Town of Lloyd Defendants); Dkt. Nos. 13, 34, 36, 38 (motion to dismiss by the State Defendants)). For the reasons discussed below, the motions are denied in part and granted in part.

---

[1] As of the date of this decision, which is well past the 90-day limit for service specified under Rule 4(m) of the Federal Rules of Civil Procedure, no affidavit of service has been filed for Defendant Joseph Ariemma, who is identified in the Complaint as a police officer of the "Hamlet of Hamlin." (Dkt. No. 1, ¶ 24). Plaintiffs are hereby notified that this action will be dismissed without prejudice against Defendant Ariemma for lack of personal jurisdiction unless Plaintiffs show good cause for their failure to serve him in a timely manner. *See* Fed. R. Civ. P. 4(m). Additionally, the docket indicates that Defendant Hamlet of Highland was served "C/O TOWN OF LLOYD" on February 24, 2017. (Dkt. No. 18). Counsel for the Town of Lloyd Defendants have not made an appearance on behalf of the Hamlet of Highland, nor have they controverted the Complaint's allegation that the Hamlet of Highland (erroneously referred to in the Complaint as the "Hamlet of Hamlin") is a "municipal corporation" incorporated under New York law. (Dkt. No. 1, ¶ 17). The Court notes that a hamlet does not appear to be a "municipal corporation" under New York law. *See* N.Y. Gen. Mun. Law § 2 (defining a municipal corporation as "includ[ing] only a county, town, city and village").

## II.     FACTS[2]

Plaintiff alleges that, in the early morning hours of January 25, 2014, Defendant Investigator Sciutto was conducting surveillance in the parking lot of a bar located on Route 9W in Highland, New York, when several gunshots were heard. (Dkt. No. 1, ¶¶ 26-27). Defendant Sergeant Richards "broadcast a call of shots fired at the location," and police units from the Town of Lloyd, Ulster County, and Highland[3] responded by reporting to the location. (*Id.* ¶¶ 28-29).

Plaintiff Gordon was driving on Route 9W accompanied by three passengers, including Plaintiff Smith, when he stopped shortly "north of Route 9W at its intersection with Milton Avenue in Highland." (*Id.* ¶¶ 30-31). At that point, "[s]everal Police Officers" of the Town of Lloyd, Ulster County, and Highland, including Defendants Police Officer Sawyer, Deputy Riley, Sergeant Kalimeras, Police Officer Zani, and Police Officer Esposito "approached the vehicle with guns drawn." (*Id.* ¶ 32). Defendant Sawyer "discharged his weapon in the direction" of Plaintiff Gordon, and Defendant Riley "discharged two rounds of his weapon in the direction" of Plaintiff Gordon. (*Id.* ¶ 33-34). Defendant Kalimeras and "several other officers approached the rear door" of the car. Although Plaintiff Smith "repeatedly stated that he did not have anything in his hands," Defendant Kalimeras, State Police Investigator Jordan, and State Trooper Filli[4]

---

[2] Unless otherwise noted, the facts are taken from the Complaint and assumed to be true for the purposes of this decision. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[3] Plaintiff repeatedly refers to the Hamlet of Highland as the "Hamlet of Hamlin" throughout the Complaint. *Compare* Dkt. No. 1, at 1 (caption identifying the Hamlet of Highland as a defendant, with no mention of the "Hamlet of Hamlin"), *with id.* ¶ 17 (listing the "Hamlet of Hamlin" as a party). The Court construes all mentions of "Hamlin" as references to the Hamlet of Highland instead.

[4] Plaintiff spelled Defendant Jordan's last name as "JORDON" and identified Defendants Jordan and Filli as police officers of the "Hamlet of Hamlin Police Department." (*Id.* ¶¶ 17-19). In her affirmations in support of State Defendants' motions to dismiss, counsel for State Defendants clarifies that Defendant Jordan is a New York State Police Investigator (Dkt. No. 34-2, ¶ 3) and Defendant Filli is New York State Trooper (Dkt. No. 36-2, ¶ 3). As Plaintiffs do not dispute these averments, the Court's summary of the facts reflects these individual Defendants' correct names and titles.

nevertheless apprehended him. (*Id.* ¶ 37-39). During the arrest, Plaintiff Smith "was struck about the face and body by multiple officers," including Defendants Kalimeras, Filli, and Jordan. (*Id.* ¶ 40)

Plaintiff Gordon "sustained two gunshot wounds – one to the left harm and the other to the abdomen." (*Id.* ¶ 35). Plaintiff Smith "sustained an open wound to the face, bruising of the right eye, abrasions about the body and a concussion." (*Id.* ¶ 41). Both were transported to St. Francis Hospital. (*Id.* ¶¶ 36, 42).

Plaintiffs were arrested for criminal possession of a weapon and related charges. (*Id.* ¶ 43). According to state court records,[5] Plaintiff Gordon entered a guilty plea to criminal possession of a firearm (N.Y. Penal Law § 265.01-b[1]) on December 19, 2015, and filed an appeal on March 18, 2015. (Dkt. No. 28-4). State court records also show that Plaintiff Smith was convicted by a jury of criminal possession of a weapon in the second degree (§ 265.03[3]) and criminal possession of a firearm (§ 265.01-b[1]) on August 12, 2015, and that Plaintiff Smith has appealed the verdict. (Dkt. No. 28-5). The Complaint indicates that Plaintiffs remain in custody. (Dkt. No. 1, ¶ 44).

## III.   STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the

---

[5] The Court takes judicial notice of these public records. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (noting that "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)"); *Johnson v. Pugh*, No. 11-cv-385, 2013 WL 3013661, at *2, 2013 U.S. Dist. LEXIS 85699, at *5-6 (E.D.N.Y. June 18, 2013) (finding it "proper to take judicial notice of plaintiff's guilty plea, conviction, and sentencing as a matter of public record without converting defendant's motion to one for summary judgment").

factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). When deciding a motion to dismiss, the Court's review is ordinarily limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## IV.   DISCUSSION

### A.   False Arrest Claim (Second Cause of Action)

Defendants argue that Plaintiff Smith fails to state a claim for false arrest because his conviction establishes probable cause for his arrest as a matter of law. (Dkt. No. 30-4, at 14; Dkt. No. 29, at 13-14). "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). To establish a false arrest claim, a plaintiff must show that: (1) the defendant intended to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest'" under both New York law and § 1983. *Weyant*, 101 F.3d at 852 (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also Singer v. Fulton Cty. Sheriff*, 63 F.3d

5

110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). Plaintiff Smith's record of conviction shows that he was arrested and later convicted of criminal possession of a firearm. (Dkt. No. 28-5). This conviction, which has not been reversed on appeal or otherwise invalidated, establishes probable cause for their arrest as a matter of law. *Jean-Laurent v. Cornelius*, No. 15-cv-2217, 2017 WL 933100, at *4, 2017 U.S. Dist. LEXIS 33222, at *9 (S.D.N.Y. Mar. 8, 2017) (stating that "a conviction for the offense which precipitated the arrest is definitive evidence of probable cause"), *appeal dismissed*, No. 17-1313, 2017 WL 5054220, 2017 U.S. Dist. LEXIS 22243 (2d Cir. Sept. 13, 2017). Accordingly, Plaintiff Smith's false arrest claim is dismissed.[6]

### B.     Malicious Prosecution Claim (Fourth Cause of Action)

Defendants seek dismissal of Plaintiff Smith's malicious prosecution claim because his conviction has not been reversed on appeal or otherwise invalidated. (Dkt. No. 30-4, at 13-14; Dkt. No. 29, at 12-13). "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Id.* at 161 (quoting *Murphy v. Lynn*, 118 F.3d 938, 947

---

[6] Plaintiff Smith argues in opposition that his false arrest, malicious prosecution, and denial of fair trial claims should be stayed, rather than dismissed, to protect them from potential time bars. (Dkt. No. 41, at 14-15). The claims, however, would not start accruing until the conviction is reversed. *See Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994) ("Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." (citations omitted)). Plaintiff Smith would thus suffer no hardship if those claims are dismissed without prejudice.

6

(2d Cir. 1997)). Plaintiff Smith has not alleged that the criminal proceedings against him were favorably terminated. Indeed, by his own admission, he remains in custody. (Dkt. No. 1, ¶ 44). Plaintiff Smith has thus failed to state a claim for malicious prosecution, and accordingly, the claim is dismissed.

### C. Denial of a Fair Trial Claim (Fifth Cause of Action)

Defendants contend that Plaintiff Smith has failed to alleged sufficient facts to state a claim for denial of a fair trial under § 1983. (Dkt. No. 30-4, at 14-15; Dkt. No. 29, at 18; *see also* Dkt. Nos. 13-1, 34-1, 36-1, 38-1, at 5). More specifically, they point out that the Complaint's allegations that Defendants "fabricat[ed] evidence" and "were aware or should have been aware of the falsity of the information used to prosecute plaintiff" are conclusory. (*See* Dkt. No. 29, at 18; Dkt. No. 1, ¶¶ 95, 96). Defendants also argue that the claim is barred by *Heck*, given than its success necessarily implies the invalidity of Plaintiff's conviction. *See* 512 U.S. at 487 (holding that, in a § 1983 damages suit, the "court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," and "if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated"). Plaintiff's opposition does not address either point. The Court agrees that the claim must be dismissed on the above-stated grounds.

### D. Excessive Force and Failure to Intervene Claims (First, Third, and Sixth Causes of Action)

#### 1. Personal Involvement

The Town of Lloyd Defendants, the Ulster County Defendants, and the State Defendants respectively seek the dismissal for lack of personal involvement of Defendant Zaccheo, Sciutto, Brophy, Mullen, and Richards (Dkt. No. 29, at 7-8), and Khan, Curley, Restivo, and Benoit (Dkt. No. 13-1, at 5; Dkt. No. 38-1, at 5). "It is well settled in this Circuit that 'personal involvement

of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). "A police officer is personally involved in the use of excessive force if the officer either: (1) directly participates in an assault; or (2) is present during the assault, and fails to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Marlin v. City of New York*, 2016 WL 4939371, at *13, 2016 U.S. Dist. LEXIS 122426, at *40 (S.D.N.Y. Sept. 7, 2016). "A plaintiff need not establish which officer, among a group of officers, directly participated in the attack and which officer failed to intervene." *Id.*

Since all of Plaintiff's claims are brought under § 1983 (Dkt. No. 1, ¶¶ 45-108), and Plaintiff seeks monetary damages (*id.* at 17), the Complaint must allege the personal involvement of each defendant sued. The Complaint is utterly devoid of any factual allegations against Defendants Zaccheo, Brophy, Mullen, Khan, Curley, Restivo, and Benoit, who are only mentioned in the section of the Complaint that identifies the parties. (*Id.* ¶¶ 3-25) And the Complaint only alleges that Defendants Sciutto and Richards, respectively, surveilled the parking lot and broadcast the location where gunshots were heard, not that they were present at the scene of the encounter. (*See id.* ¶¶ 26-28). Consequently, it fails to state claims for excessive force and failure to intervene against Defendants Zaccheo, Sciutto, Brophy, Mullen, Richards, Khan, Curley, Restivo, and Benoit.

    **2.**    **Municipal Liability**

Defendants move to dismiss the Town of Lloyd and Ulster County on the ground that Plaintiffs have failed to state a claim of municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (Dkt. No. 30-4, at 10-12; Dkt. No. 29, at 20-23). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents," and is liable only

when it actually deprives, through the execution of its policies, an individual of his constitutional rights. *Monell*, 436 U.S. at 694. Official municipal policy, which "includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices so persistent and widespread as to practically have the force of law," must be "the moving force" behind the violation. *Connick v. Thompson*, 563 U.S. 51, 59 n.5, 61 (2011). The Supreme Court explained:

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. . . . To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact."

*Id.* at 61 (alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

The Complaint states that the Town of Lloyd and Ulster County "had a policy or routine practice of using excessive force when effectuating arrests" (Dkt. No. 1, ¶ 78), that "it was the policy and/or custom of [the Town of Lloyd and Ulster County] to inadequately train, supervise, discipline, and/or terminate their officers . . . thereby failing to adequately discourage further constitutional violations on the part of their officers" (*id.* ¶ 79), that officers of those municipalities "believed that their actions would not be properly monitored . . . investigated or sanctioned, but would be tolerated" as a result (*id.* ¶ 80), and that these "policies and customs demonstrate a deliberate indifference on the part of the policymakers" of the Town of Lloyd and Ulster County (*id.* ¶ 81).

These allegations, as Defendants point out (*see* Dkt. No. 29, at 21-22), are barebones recitals of the elements of a *Monell* claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Complaint contains no factual allegations of other instances of excessive force used by officers of the Town of Lloyd or Ulster County. Accordingly, it cannot

9

support a claim that those municipalities had a ***policy of using excessive force***. *See Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) ("Nor can a 'policy, custom, or practice' arise from a single instance of unconstitutional conduct by a municipal employee who is not a municipal policymaker under state law." (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985))). Nor have Plaintiffs indicated the basis for their belief that the officers' training was deficient or that these municipalities did not supervise or discipline officers for using excessive force. *See Santos*, 847 F. Supp. 2d at 576 ("To establish municipal liability under § 1983, a plaintiff must do more than simply state that a municipal policy or custom exists. Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." (citation omitted)); *Rifenburg v. Hughes*, No. 15-cv-978, 2016 WL 866344, at *3, 2016 U.S. Dist. LEXIS 26887, at *9 (N.D.N.Y. Mar. 3, 2016) ("Plaintiff's complaint is replete with boilerplate statements declaring that such policies and practices exist and were the cause of his alleged injuries, yet devoid of any specific facts that would support such an inference.").

To the extent Plaintiffs rely on the single incident at issue in this action as the sole basis for alleging a ***policy of not training in the use of reasonable force***, their claims fail as well. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference . . . . Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62. A narrow exception exists, however, for *Monell* claims alleging lack of training in the "rare" case where "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 64

10

(describing the single-incident liability theory formulated in *Canton*, 489 U.S. at 390 & n.10). In that case, the plaintiff must plead facts giving rise to a plausible inference that: (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992) (quoting *Canton*, 489 U.S. at 390 n.10)).

The situation presented in this case—inasmuch as it involved the use of potentially deadly force against armed suspects in highly volatile circumstances (a situation not too dissimilar from the hypothetical described in *Canton*)—satisfies all three elements. But the single-incident theory is only triggered when a plaintiff has alleged the absence of training in the first place. *See Connick*, 563 U.S. at 67 (explaining that the "*Canton* hypothetical assumes that the armed police officers have no knowledge at all of the constitutional limits on the use of deadly force" and are left with "the utter lack of an ability to cope with constitutional situations"); *Copelin v. Suffolk Cty.*, No. 13-cv-3237, 2013 WL 5460748, at *4 n.2, 2013 U.S. Dist. LEXIS 141490, at *11 n.2 (E.D.N.Y. Sept. 30, 2013) (stating that the single-incident liability theory does not apply where the "plaintiff does not allege a complete lack of training of County deputy sheriff investigators or that County deputy sheriff investigators had an 'utter lack of an ability to cope with constitutional situations' that existed in the hypothesized single-incident case" (quoting *Connick*, 563 U.S. at 67)).

The Complaint contains no allegations, other than boilerplate statements, from which the Court could plausibly infer that the Town of Lloyd or Ulster County failed to train their officers

11

in the use of reasonable force. Plaintiffs cite *Vasconcellos v. City of New York*, No. 12-cv-8445, 2014 WL 4961441, 2014 U.S. Dist. LEXIS 143429 (S.D.N.Y. Oct. 2, 2014), and *Goode v. Newton*, No. 12-cv-754, 2013 WL 1087549, 2013 U.S. Dist. LEXIS 35171 (D. Conn. Mar. 14, 2013), but in those two cases the courts inferred the absence of training based on other instances of alleged police misconduct. Here, Plaintiffs have not "pled sufficient facts 'to raise a reasonable expectation that discovery will reveal evidence' of inadequate training or supervision." *Goode v. Newton*, 2013 WL 1087549, at *8 (quoting *Twombly*, 550 U.S. at 556). Accordingly, the excessive force claims against the Town of Lloyd and Ulster County must be dismissed.

### 3. Remaining Individual Defendants

The only remaining claims for excessive force and failure to intervene are against Defendants Zani, Esposito, Kalimeras and Sawyer of the Town of Lloyd Police Department, Defendant Riley of the Ulster County Sheriff's Office, and Defendants Jordan and Filli of the State Police. As to excessive force, the Town of Lloyd and Ulster County Defendants argue that these claims should be dismissed because the officers used objectively reasonable force or are otherwise entitled to qualified immunity. (Dkt. No. 30-4, at 15-20; Dkt. No. 29, at 15-17), and the State Defendants contend that the Complaint does not contain sufficient "factual detail" to state a claim. (Dkt. No. 34-1, at 5; Dkt. No. 36-1, at 5). As to failure to intervene, Defendants argue that the Complaint contains only conclusory recitals and does not set forth factual allegations indicating that Defendants had a realistic opportunity to intervene. (Dkt. No. 30-4, at 18-19; Dkt. No. 29, at 19-20).

#### a. Excessive Force

Any claim that police officers "have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the

12

Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted). In determining whether a particular use of force is "reasonable," a court must evaluate "the totality of the circumstances, which requires consideration of the specific facts in each case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000). This "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

Defendants argue that Plaintiff Gordon's plea allocution and the jury verdict against Plaintiff Smith establish that the officers used reasonable force. (Dkt. No. 29, at 17; Dkt. No. 30-4, at 17). Although the Court may take judicial notice of the existence of a plea allocution, it cannot consider any statements contained in the plea for the truth of the matter asserted therein. *See Kuar v. Mawn*, No. 08-cv-4401, 2011 WL 838911, at *4, 2011 U.S. Dist. LEXIS 22209, at *11 (E.D.N.Y. Mar. 4, 2011). More importantly, neither the plea allocution nor the jury conviction, which concern Plaintiffs' ultimate guilt of criminal possession of firearms, preclude Plaintiffs' claim that Defendants used excessive force. Even assuming that Defendants' description of the facts is correct and that Plaintiffs were evading the scene of a shooting, had weapons in their possession, and exposed the weapons to the officers (Dkt. No. 30-4, at 16-17), there remain factual questions as to whether the officers were reasonable in shooting Plaintiff Gordon and later striking Plaintiff Smith.[7] Those issues were not litigated in the criminal

---

[7] The Court notes that this assumption is unwarranted at the pleading stage and that all reasonable inferences must be drawn in Plaintiffs' favor. Further, the Court agrees with Plaintiff that "it is entirely unclear" from the plea allocution when Plaintiff Gordon passed the gun to a passenger in the car and "when that took place in relation to

13

proceedings, and there is no risk of inconsistent results. *See Kimbrough v. Town of Dewitt Police Dep't*, No. 08-cv-03, 2010 WL 3724121, at *7, 2010 U.S. Dist. LEXIS 96245, at *20-21 (N.D.N.Y. Mar. 8, 2010) ("If . . . both the criminal charges and Plaintiff's civil excessive force claim were tried together, it would not necessarily be inconsistent for the trier of fact to conclude both that Plaintiff attempted to assault a police officer and that police officers used an unreasonable amount of force under the Fourth Amendment."), *report and recommendation adopted*, 2010 WL 3724017, 2010 U.S. Dist. LEXIS 96243 (N.D.N.Y. Sept. 15, 2010). For similar reasons, the record is insufficient at this stage to rule on Defendants' arguments about qualified immunity. *See Edrei v. City of New York*, 254 F. Supp. 3d 565, 582 (S.D.N.Y. 2017) ("At this early stage and 'without a factual resolution . . . it is not possible to determine whether defendants are qualifiedly immune,' making it inappropriate to dismiss the claim." (quoting *Jones v. Parmley*, 465 F.3d 46, 64 (2d Cir. 2006))); *Maloney v. County of Nassau*, 623 F. Supp. 2d 277, 292 (E.D.N.Y. 2007) (noting that, because it "necessarily involves a fact-specific inquiry," the defense of qualified immunity "is generally premature to address . . . in a motion to dismiss").

### b. Failure to Intervene

An "officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that excessive force is being used." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Id.* "Whether an officer had sufficient time to intercede or was capable of preventing

---

this shooting incident and, if in fact, police realized that plaintiff was unarmed at the time he was shot." (Dkt. No. 41, at 10).

the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.*

The Ulster County Defendants contend that the Complaint does not specify "which defendant failed to intervene" or plausibly set forth "facts suggesting it was realistic for any one of them to do so." (Dkt. No. 29, at 19). The Town of Lloyd Defendants similarly argue that the Complaint does not specify the "duration of the incident" or the location of Defendants in relation to Plaintiffs at the time of the events. (Dkt. No. 30-4, at 19). But taking the allegations to be true and drawing all reasonable inferences in Plaintiffs' favor, as it must on a motion to dismiss, the Court reads the Complaint to allege that the remaining individual Defendants were present and failed to take steps to prevent the use of excessive force against Plaintiffs even though they had a realistic opportunity to do so. *See Marlin*, 2016 WL 4939371, at *14 ("On the instant pre-answer motion, the Court must assume that each of the individual officers was present at Plaintiff's arrest and that each failed to intervene."); *see also Paul v. City of New York*, No. 16-cv-1952, 2017 WL 4271648, at *8, 2017 U.S. Dist. LEXIS 156416, at *24 (S.D.N.Y. Sept. 25, 2017) (concluding that a complaint sufficiently stated a claim for failure to intervene where "all the named officers responded to the scene, all were on scene for several hours, some officers participated in the door-breach and employed force, and some officers witnessed the incident"). The Court rejects Defendants' invitation to determine at this early stage whether Defendants *actually* had a realistic opportunity to intervene. (*See* Dkt. No. 30-4, at 18).

In sum, the Complaint sufficiently alleges that the officers used an amount of force that was plausibly unwarranted in the circumstances or failed to prevent the use of such excessive force. Accordingly, Plaintiffs' claims for excessive force and failure to intervene against Defendants Zani, Esposito, Kalimeras, Sawyer, Riley, Jordan, and Filli may proceed.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant Ariemma shall be **DISMISSED without further order** for lack of personal jurisdiction, unless Plaintiffs show good cause, within thirty (30) days of this Order, for their failure to serve him in a timely manner; and it is further

**ORDERED** that the motions to dismiss (Dkt. Nos. 13, 27, 30, 34, 36, 38) are **DENIED** as to Plaintiff Gordon's excessive force claim (first cause of action), Plaintiff Smith's excessive force claim (third cause of action), and Plaintiffs Gordon and Smith's failure to intervene claim (sixth cause of action) against Defendants Zani, Esposito, Kalimeras, Sawyer, Riley, Jordan, and Filli; and it is further

**ORDERED** that the motions to dismiss (Dkt. Nos. 13, 27, 30, 34, 36, 38) are otherwise **GRANTED** in their entirety; and it is further

**ORDERED** that Plaintiff Smith's false arrest claim (second cause of action), malicious prosecution claim (fourth cause of action), and denial of fair trial claim (fifth cause of action) are **DISMISSED without prejudice** in their entirety; and it is further

**ORDERED** that Defendants Town of Lloyd, Ulster County, Zaccheo, Sciutto, Brophy, Mullen, Richards, Khan, Curley, Restivo, and Benoit are **DISMISSED** as Defendants in this action.

**IT IS SO ORDERED.**

Dated: December 18, 2017
  Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
U.S. District Judge